IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KATHERINE E. MEYER, | ) | |
| | ) | |
| Plaintiff, | ) | 8:08CV231 |
| | ) | |
| v. | ) | |
| | ) | |
| SHEA DEGAN, DANIEL P. CONWAY, | ) | MEMORANDUM AND ORDER |
| JOHN DOE I, JOHN DOE II, JOHN | ) | |
| DOE III, JOHN DOE IV, EUGENE J. | ) | |
| GRAVES, JR., and DANIEL GRAVES, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on the motions for summary judgment, Filing Nos. 45, 53 and 90, by defendants Shea Degan, Daniel Conway, and John Does I through IV (collectively the "deputy sheriff defendants"), and defendants Eugene Graves, Jr., and Daniel Graves ("the Graves defendants"). Also before the court is a motion for Rule 11 sanctions (Filing No. 57), a motion to keep the record open (Filing No. 84), and a motion to supplement the record (Filing No. 96), all filed by the Graves defendants.

## BACKGROUND

The following facts are undisputed unless otherwise noted. *(See* Filing Nos. 47, 54, 74, and 75). On June 3, 2007, plaintiff Katherine Meyer was residing at 15302 Weber Street, Douglas County, Nebraska. The residence was owned by Eugene Graves, Jr., Meyer's former fiancée. Meyer was living at the home temporarily with the permission of Eugene Graves, although eviction proceedings were pending in state court.

On June 3, 2007, Eugene Graves, Jr., and his son, Daniel Graves, arrived at the residence accompanied by Shea Degan, an off-duty Douglas County deputy sheriff. Degan also owned a private security business at the time. The Graves defendants and Degan entered the attached garage and Eugene Graves backed an SUV out of the garage.

Meanwhile, Meyer called 911 and reported that three individuals she identified as Eugene Graves, Daniel Graves, and a third unknown man with a badge and a gun, had broken into her garage. Sheriff's deputies responded to the 911 call and arrived on the scene. Deputy Conway spoke with Degan before he entered the residence and spoke to Meyer. Thereafter, Conway placed Meyer under arrest for obstructing a peace officer and transported her to the Douglas County Corrections Center for booking.

In her amended complaint, Meyer alleges violations of 42 U.S.C. § 1983, violations of the Fourth and Fourteenth Amendment to the United States Constitution, and state law claims for assault, battery and false imprisonment. (Filing No. 28). Plaintiff alleges the deputy sheriff defendants acted under color of state law.[1] Plaintiff further alleges that defendants Eugene J. Graves, Jr., and Daniel Graves conspired with the deputy sheriffs to violate plaintiff's constitutional rights.

## STANDARD OF REVIEW

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). "Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

---

[1] Plaintiff's claims against all of the sheriff defendants in their official capacity, and her state law claim under Neb. Rev. Stat. § 20-148, were previously dismissed by the court. (Filing No. 51).

2

157 (1970). Therefore, if a defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 174 (8th Cir. 1987).

Once the defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e)(2); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show there is sufficient evidence to support a jury verdict in his or her favor. *Id.* "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Although facts are viewed in the light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis Univ.*, 167 F.3d 398, 401 (8th Cir. 1999). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

The doctrine of qualified immunity shields governmental officials from personal liability if their actions, even if unlawful, were nevertheless objectively reasonable in light

3

of the clearly established law at the time of the events in question. *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987). "Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). The Supreme Court in its decision in *Saucier v. Katz,* 533 U.S. 194, 201 (2001), directed that a two-step protocol be followed by those courts required to rule on issues of qualified immunity. The first inquiry is whether the facts alleged show the officer's conduct violated a constitutional right. If the answer is "yes," the second inquiry is whether the right was clearly established at the time and in the specific context of the case. *Id.* (noting "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). In *Pearson*, the Supreme Court declared that "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 818.

## ANALYSIS

### Motions for Summary Judgment

**Defendants John Does I through IV**

In the amended complaint, filed on August 25, 2008, Meyer names four individuals by name, and John Does I through IV. The John Doe defendants are identified only as "deputy sheriffs employed by Douglas County." (Filing No. 28, ¶ 3). Meyer made no attempt to identify the John Doe defendants by name even though her briefs and evidence

4

submitted in opposition to the summary judgment motions include the names of additional deputy sheriffs involved in the incident on June 3, 2007. The deputy sheriff defendants correctly argue that more than 120 days have passed since the filing of the amended complaint with no service upon the John Doe defendants. Meyer has not responded with respect to the relief sought by the John Doe defendants. The court finds that Meyer's § 1983 claims against the John Doe defendants shall be dismissed as a matter of law.[2]

**State Law Claims**

In the earlier ruling on the deputy sheriff defendants' motion to dismiss, the court determined that Meyer's state tort claims against the deputy sheriffs were sufficient to state a claim. (Filing No. 51). All of the remaining defendants have now filed motions for summary judgment contending that they are entitled to judgment as a matter of law as to the state tort claims. In response to the deputy sheriff defendants' separate motion for summary judgment on the state tort claims (Filing No. 90), Meyer concedes that the deputy sheriffs were acting within the scope of their employment and that those state law claims should be dismissed. Accordingly, the court finds that the motion for summary judgment (Filing No. 90) shall be granted with respect to Meyer's state tort claims against the deputy sheriff defendants.

In their brief filed in support of their motion for summary judgment, the Graves defendants address all three state tort claims; however, only the fifth cause of action, involving false arrest and false imprisonment, is alleged against them. The Graves defendants contend there is no evidence to support Meyer's allegations. Meyer offers no

---

[2]The court previously granted a motion to dismiss Meyer's claims against all of the deputy sheriff defendants, named and unnamed, in their official capacity. (Filing No. 51). Only Meyer's claims against the defendants in their individual capacity remain for the purpose of the motion for summary judgment.

argument in response. Therefore, the court finds that the Graves defendants' motion for summary judgment (Filing No. 53) should be granted with respect to Meyer's state tort claims.

**§ 1983 Claims**

The only claims remaining for the court to address are Meyer's § 1983 claims against Shea Degan, Daniel Conway, Eugene Graves, Jr., and Daniel Graves. In her amended complaint, Meyer alleges that the defendants "conspired together to violate Plaintiff's constitutional rights [under the Fourth and Fourteenth Amendments], and acted in concert with each other and in conjunction with each other to violate Plaintiff's constitutional rights." (Filing No. 28, ¶ 15).

> 42 U.S.C. § 1983 provides, in relevant part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a cause of action under § 1983, a plaintiff must allege both a deprivation of a federal right, and that the person who deprived the plaintiff of that right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**"Under Color of State Law"**

There is no dispute that Conway was acting under the color of state law when he arrived at 15302 Weber Street on June 3, 2007. He was an on-duty deputy sheriff arriving in a cruiser, in uniform, and in response to a 911 call. Clearly, all of his actions, including the arrest of Meyer, were performed under color of state law.

Degan, on the other hand, argues that Meyer's claims arising from the allegedly unlawful entry and seizure of property must fail because he was not acting under color of state law at the time of the incident. Degan contends that he was "engaged as private security by and for Mr. Graves." (Filing No. 47, p. 14). That Degan was off-duty on June 3, 2007, when he accompanied Eugene and Daniel Graves to 15302 Weber Street is not disputed. Neither is the fact that Degan had his own private security company. However, Degan's own statements belie his assertion that he was working as private security at the time of the incident. Degan testified that he received no payment for his security services, and in fact did not expect payment. (Filing No. 76, Ex. 4-A, Degan deposition, 17:9-25). Degan acknowledged that he accompanied Eugene Graves as a favor to his boss, Sheriff Tim Dunning, a friend of Graves. (*Id*. at 11:8-12).

"Deciding whether a police officer acted under color of state law should turn largely on the nature of the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties." *Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir. 1995) (citing *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir.1975)).

In considering whether Degan was acting under color of state law, the court notes the following evidence: (1) Degan was performing a task that was also a common duty in his employment as a deputy sheriff[3]; (2) he identified himself to Meyer as an off-duty deputy sheriff; (3) he displayed his badge and firearm; (4) he informed Meyer that if she touched Eugene Graves, Jr., she would be headed to jail; and (5) he told Meyer that the sheriff's department knew that he was there. (Filing No. 76, Degan deposition, 24:8-16,

---

[3]The evidence suggests that it is not uncommon for *on-duty* deputy sheriffs to respond to domestic disputes with the purpose of "keeping the peace." (Filing No. 79-11, Sergeant Robert A. Jones deposition, 38:9-11, 20-21).

7

26:9-10, 22:1-4). In addition to these acts acknowledged by Degan, Meyer further alleges that Degan threatened her with his gun. (Filing No. 76, Ex. 1, Meyer affidavit, ¶ 17).[4] Degan's conduct at the scene could arguably be construed as signs of state authority and the ability to enforce state authority. Meyer has presented sufficient evidence to support her allegations that Degan was acting under color of law.

The Graves defendants argue that they are entitled to summary judgment because as private citizens they cannot act under color of state law. (Filing No. 54, p. 5). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Actions of a private party may be "fairly attributable" to the state in certain circumstances when the private party acts in concert with state actors. *Id.* at 838 n.6. In order for a private person who willfully participates in joint action with a state actor to have acted under color of state law, there must at least be a shared purpose to deprive the plaintiff of a constitutional right, namely, "a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451-52 (8th Cir. 1993).

Meyer alleges that the Graves defendants conspired with the deputy sheriffs to violate her constitutional rights. Construing the facts in a light most favorable to the plaintiff, the court finds that Meyer has presented sufficient evidence to create a factual issue for the jury to decide whether the Graves defendants were acting in concert with

---

[4] Degan disputes that allegation, stating that "[a]t no time did I point my gun at or near her or threaten her with it in any way." (Filing No. 46-4, Exhibit 3, Degan affidavit, ¶ 6).

8

Degan and therefore under color of state law on June 3, 2007. Accordingly, the court determines that Eugene Graves, Jr., and Daniel Graves's motion for summary judgment with respect to Meyer's § 1983 claims is denied.

**Alleged Unlawful Entry and Seizure of Property**

Defendants Degan and Conway argue that Meyer has failed to "show that she was deprived of a constitutional right due to state action [and] that [they] are entitled to qualified immunity for their actions and therefore should not be held liable" with respect to the allegedly unlawful entry and seizure of property. (Filing No. 47, p. 5).

First, both Conway and Degan argue that there is no state action because they did not personally remove any of Meyer's alleged property from the residence. Conway argues that he was only at the scene in response to Meyer's 911 call. Degan argues that he was present as private security for Eugene Graves and to keep the peace. Degan further contends that he did not enter the house or assist in the physical removal of Meyer's alleged property. (Filing No. 47, p. 14).

"When a police officer is involved in a private party's repossession of property, there is no state action if the officer merely keeps the peace, but there is state action if the officer affirmatively intervenes to aid the repossessor enough that the repossession would not have occurred without the officer's help." *Moore v. Carpenter*, 404 F.3d 1043, 1046 (8th Cir. 2005). Based on his own statements, Degan's role went beyond that of keeping the peace when he arrived with the Graves defendants at 15302 Weber on June 3, 2007. Degan testified that he was the first to enter the attached garage and then proceeded to open the overhead door and hold it while Eugene Graves, Jr., backed a vehicle out of the garage and then returned on foot. (Filing No. 46, Ex. 3, Degan affidavit, ¶ 7; Filing No. 76, Ex. 4-A, Degan deposition, 25:19-26:1). There is conflicting evidence with respect to how

9

he first gained entry to the garage. Degan contends that they used Eugene Graves's key. (*Id*. at ¶ 7; *id*. at 24:24-25). Meyer and her parents contend that Degan kicked in the door, which had been secured by Meyer's father with strips of wood and screws. (Filing No. 76, Ex. 1, Meyer affidavit, ¶¶ 9, 14; Ex. 2, Anthony Meyer affidavit, ¶ 6).

Conway's alleged role was more indirect. Conflicting evidence has been presented with respect to Conway's involvement in the allegedly unlawful seizure of property. Conway maintains that he did not observe or direct the removal of any property from the residence. (Filing No. 46-2, Ex. 1, Conway affidavit, ¶¶ 13, 14). However, according to Meyer, upon Conway's entry into the home, he informed her that she was not to interfere with the removal of items from the home by Eugene and Daniel Graves and physically prevented her from protecting her property. (Filing No. 76, Exhibit 1, Meyer's affidavit, ¶ 25; Ex. 2, Anthony Meyer affidavit, ¶ 11). She contends that while she tried to explain to Conway that her personal items were being taken, the Graves defendants continued to remove property from the residence. (Filing No. 76, Exhibit 1, Meyer's affidavit, ¶¶ 27-28). She further contends that her arrest and removal from the scene further enabled the Graves defendants to remove her property. (*Id*. at ¶ 29).

Construing the facts in a light most favorable to the plaintiff, as the court must at this state of the proceedings, the court finds that Meyer has presented genuine issues of material facts with respect to her claims of state action regarding her unlawful entry and seizure of property claims under § 1983.

Next, Conway and Degan contend that Meyer's claims arising from the allegedly unlawful entry and seizure of property must fail because they are entitled to qualified immunity. Conway and Degan do not appear to challenge whether Meyer asserted a clearly established constitutional right; rather they argue that a "reasonable officer standing

in [their place] . . . could have believed their conduct was lawful in light of the information available to them at the time." (Filing No. 47, pp. 13-14).

Degan maintains that he approached the situation with the understanding that Eugene Graves, Jr., owned the residence at 15302 Weber Street, had recently moved out, and was only removing property, including the vehicle, owned by him or his company. (Filing No. 46, Exhibit 3, Degan affidavit ¶ 3; Filing No. 76, Exhibit 4-A, Degan deposition 18:24-25). Degan's understanding of the situation was based upon the representations made to him by the Sheriff and Eugene Graves. (Filing No. 76, Ex. 1-C, Jirak cruiser camera audio transcription). Degan admitted that he did not seek any confirmation and was unaware of any pending court proceedings or agreement which may have existed between Eugene Graves and Katherine Meyer allowing her to reside at the residence, but admitted that it would have made a difference to him. (Filing No. 76, Exhibit 4-A, Degan deposition 43:13-19). Degan was aware of Meyer's accusations that he and Eugene Graves had no right to be at the residence. (Filing No. 46, Exhibit 3, Degan affidavit ¶ 11).

Conway's understanding of the situation was based upon the representations made to him by Degan. (Filing No. 46, Exhibit 1, Conway affidavit ¶ 4). According to Conway, Meyer's noncompliant behavior prevented him from getting useful information from her about the situation. (Filing No. 47, p. 13). However, the transcription of the recording from the camera in Deputy Jirak's cruiser includes Meyer's attempts to explain to Conway that her personal property was being removed and that she had documentation showing that Eugene Graves was not the owner of the residence.[5] (Filing No. 76, Ex. 1-C, Jirak cruiser

---

[5] Meyer submitted evidence in support of her allegation that Linda Frakes Graves, Eugene Graves, Jr.'s ex-wife, was the actual owner of the residence at 15302 Weber on June 3, 2007. (Filing No. 76, p. 108). However, Meyer did not dispute the statement in the Graves defendants' brief (Filing No. 54) that Graves was the owner of the residence on June 3, 2007.

camera audio transcription). There is also evidence from the recording that could arguably convince a jury that Conway was not interested in seeing Meyer's documentation or in hearing her side of the situation.[6]

The question before the court is whether there is a genuine issue of material fact as to whether a reasonable official in Degan's and Conway's positions would have known that their alleged actions violated Meyer's constitutional rights. *Turpin v. County of Rock,* 262 F.3d 779 (8th Cir. 2001).

"Even if a claim to continued possession is in dispute, that possessory interest is still constitutionally protected." *Dixon v. Lowery,* 302 F.3d 857, 864 (8th Cir. 2002) (citing *Soldal v. Cook County,* 506 U.S. 56, 58-59, 72 (1992)). "Law enforcement officers in general are well aware of the need for a neutral determination of property rights." *Dixon,* 302 F.3d at 865.

Meyer maintains that a reasonable officer in Degan's and Conway's shoes would have known that their actions violated Meyer's constitutional rights. The testimony of Sergeant Robert A. Jones, Degan's supervisor, raises issues of material fact with respect to the reasonableness of the deputies' actions.

> Q. So if Mr. Graves had called you on duty and said I want your assistance to go get my property, would you do that on duty?
> A. Well, if someone called us for assistance by all means we would respond regardless of who called us. That's our job.
> Q. And they say I want to go in and get my property from that home. You would assist them to do that even though there might be a dispute over the property?
> A. We would not assist them. We would stand by and keep the peace.
> Q. Why wouldn't you assist them?
> A. That's not our job, sir.

---

[6]Conway's first statement to Meyer that appears on the transcription is, "How many times do I have to tell you, your legal documents mean absolutely friggin nothing to me!" (Filing No. 76, Ex. 1-C, Jirak cruiser camera audio transcription, 16:56:17). He repeatedly yelled at Meyer to "shut up" or "shut her mouth." (*Id.* at 16:58:13-16:59:30).

(Filing No. 79, Ex. 11, Sergeant Robert A. Jones deposition, 28:23-29:11).

The court finds that Degan and Conway are not entitled to summary judgment on the issue of qualified immunity. Meyer has asserted a violation of a constitutional right and presented evidence from which a reasonable jury could conclude that a reasonable officer in Conway's and Degan's positions would have known that their conduct violated that right. The court finds there are genuine issues with respect to numerous material facts including, but not limited to, Meyer's right to be in the home, her expectation of privacy, the ownership of the property removed from the residence, the conduct of Degan with respect to the entry into the residence, and the conduct of Degan and Conway with respect to the removal of the property. The conflicting evidence clearly creates genuine issues as to these material facts and therefore summary judgment is not appropriate on Meyer's § 1983 claims for unlawful entry and seizure of property.

**Alleged Unlawful Arrest**

Meyer argues that her Fourth Amendment rights were violated when Deputy Conway arrested her without probable cause. (Filing No. 28, ¶¶ 11, 13). An arresting officer is entitled to immunity on a Fourth Amendment claim, however, if the arrest was objectively reasonable – that is, if a reasonable officer could have believed probable cause existed for the arrest. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Probable cause exists if "the totality of the facts based on reasonable trustworthy information would justify a prudent person in believing that the individual arrested had committed . . . an offense at the time of the arrest." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (quoting *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986) (internal quotations omitted)).

In the present case, Conway arrived on the scene in response to Meyer's 911 call reporting that three men were breaking into the attached garage of the home in which she resided. Upon his arrival at the scene, Deputy Conway initially spoke with off-duty deputy sheriff Degan. After speaking with Degan, Conway entered the home and within a few minutes, handcuffed Meyer and placed her under arrest for obstructing a peace officer.

Neb. Rev. Stat. Ann. § 28-906 (2003) states in relevant part:

> (1) A person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he or she intentionally obstructs, impairs, or hinders (a) the enforcement of the penal law or the preservation of the peace by a peace officer or judge acting under color of his or her official authority.

Conway contends that Meyer's noncompliance with his directives to sit down and be quiet interfered with his duty to preserve the peace, justifying Meyer's detention and arrest under the statute. (Filing No. 47, p. 9). An essential element of the offense is the use or a threat to use violence, force, physical interference, or obstacle. The evidence suggests that Meyer was not being aggressive. Both Conway and Deputy Jirak testified that Meyer was not acting aggressively toward anyone prior to her detention and arrest. (Filing No. 76, Ex. 4-B, Conway deposition, 30:8-16; Ex. 4-C, Jirak deposition, 15:13-16). After Meyer was placed in the cruiser, Conway told Sergeant Jones, "I could arrest her for obstruction, but . . . she's in there for now because she won't shut her mouth." (Filing No. 76, Ex. 1-C, Jirak cruiser camera audio transcription, 16:59:41).

Under Meyer's version of the facts, supported in part by the recordings from Deputy Jirak's cruiser, and the depositions of Jirak and Conway, the court cannot find that a reasonable officer in Conway's place could have believed that probable cause existed to arrest Meyer. Therefore, the court cannot find that Conway is protected by qualified immunity at this stage.

Degan argues that there is no evidence that he was involved in the arrest of Meyer. Degan's argument misses the point. Meyer does not allege that Degan placed her under arrest or directed Conway to do so, but rather that Degan acted in concert with Conway. The evidence suggests that Degan was the first individual with whom Conway consulted upon his arrival on the scene. Conway testified that he relied on Degan's representations of the situation that existed between Meyer and Eugene Graves. After his discussion with Degan, Conway proceeded to enter the home, and shortly after, placed Meyer under arrest for obstruction. As such, Meyer has shown that a genuine issue as to a material fact exists with respect to Degan's role in her allegedly unlawful arrest. Accordingly, Degan is not entitled to summary judgment with respect to this claim.[7]

## Motion for Rule 11 Sanctions

The Graves defendants argue that Meyer and her counsel have violated Rule 11 of the Federal Rules of Civil Procedure by filing and maintaining frivolous claims. (Filing No. 57). They further contend that the court should "impose sanctions against Meyer and her counsel for failure to make reasonable inquiry into the facts and law of this case," and request an evidentiary hearing to determine the amount of fees, costs, and expenses that the defendants are entitled to as a result. (*Id.*) The court finds the arguments for sanctions unconvincing and the motion will be denied.

## Motion for Leave to Keep Record Open

Defendants Eugene Graves, Jr. and Daniel Graves filed a Motion to Leave Record Open (Filing No. 84) in conjunction with their reply briefs in support of their motions for summary judgment and sanctions. They sought five additional business days to submit

---

[7]Degan and Conway's entitlement to a qualified immunity defense may be revisited, but only after the facts concerning Meyer's behavior have been determined at trial.

15

the affidavit of Linda Frakes in support of those motions. The affidavit was filed with the court on the date requested. (Filing Nos. 88 and 89). Meyer did not file an objection. The court finds that the relief sought by the motion was reasonable and should be granted. Therefore, the motion (Filing No. 84) shall be granted and the affidavit shall be deemed filed instanter. The court has reviewed the Frakes affidavit as evidence related to the motion for summary judgment and motion for Rule 11 sanctions filed by the Graves defendants.

### Motion to Supplement Record

Eugene Graves, Jr. and Daniel Graves request leave to supplement the evidence filed in support of their motions for summary judgment and sanctions. (Filing No. 96). Specifically, they seek to introduce a partial transcript of a proceeding held in Douglas County District Court with respect to litigation between Meyer and Eugene Graves, Jr. Meyer opposes the motion, arguing that the content of the transcript is irrelevant to the pending motions for summary judgment and sanctions. (Filing No. 100).

The court finds that the proposed supplement is unnecessary for the purpose of the issues currently before the court on the motions for summary judgment and motion for sanctions. Therefore, the motion shall be denied.

IT IS ORDERED:

1. Defendants Shea Degan, Daniel Conway, and John Does I-IV's motion for summary judgment, Filing No. 45, is granted in part and denied in part as follows:

   a.   the motion is granted with respect to John Does I-IV, and all of plaintiff's claims against the John Doe defendants are dismissed; and

   b.   the motion is denied with respect to plaintiff's § 1983 claims against Degan and Conway, and those claims shall proceed to trial.

2. Defendants Shea Degan and Daniel Conway's motion for summary judgment on the state tort claims, Filing No. 90, is granted, and those claims are dismissed with respect to Degan and Conway.

3. Defendants Eugene J. Graves, Jr., and Daniel Graves's motion for summary judgment, Filing No. 53, is granted in part and denied in part as follows:

   a. the motion is granted with respect to plaintiff's state tort claims, and those claims are dismissed; and

   b. the motion is denied with respect to plaintiff's § 1983 claims against Eugene J. Graves, Jr., and Daniel Graves, and those claims shall proceed to trial.

4. Defendants Eugene J. Graves, Jr., and Daniel Graves's motion for Rule 11 sanctions, Filing No. 57, is denied.

5. Defendants' motions for enlargement/extension of time, Filing Nos. 77 and 78, are granted and the briefs and index of evidence, found at Filing Nos. 80, 81, 82, and 83, are deemed filed instanter.

6. Defendants Eugene J. Graves, Jr. and Daniel Graves's motion to leave the record open, Filing No. 84, is granted and the affidavit, found at Filing Nos. 88 and 89, is deemed filed instanter.

7. Defendants Eugene J. Graves, Jr. and Daniel Graves's motion to supplement the record, Filing No. 96, is denied.

DATED this 25th day of September, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.